ROBERT N. KITAY, ESQ. (SBN: 229966)
LAW OFFICES OF ROBERT N. KITAY
2508 Garfield Ave., Ste. A
Carmichael CA 95608
Tel. (916) 266 – 0188
Fax (916) 266 – 0198

Attorney for PLAINTIFF ONTRIEL JONES aka ONTRIEL HORNBECK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA (SACRAMENTO)

| | |
|---|---|
| ONTRIEL JONES aka ONTRIEL HORNBECK,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SACRAMENTO; SACRAMENTO COUNTY SHERIFF'S DEPARTMENT; SCOTT R. JONES, in his individual and official capacity; GUSTAVUS YOUNGBERG, in his/her official capacity; and DOES 2 to 50.<br><br>Defendants. | Case No.:  2:12-cv-01141-TLN-CKD<br><br>FIRST AMENDED COMPLAINT |

COMES NOW Plaintiff ONTRIEL JONES aka ONTRIEL HORNBECK (hereafter "Plaintiff") and alleges on information and belief as follows:

### NATURE OF ACTION

1. Plaintiff was an inmate detained at the main jail of the Sacramento County Sheriff who was seriously injured because of the excessive use of force by Deputy Gustavus Youngberg.  Plaintiff alleges that the use of excessive force was an established custom,

policy, and practice of the COUNTY and the SHERIFF since at least the 1980's. Further, Plaintiff alleges that he was thereafter deprived of any and all medical care, intentionally, by employees of the COUNTY and the SHERIFF pursuant to an established custody, policy and practice since at least the 1980's.

2. Plaintiff brings this lawsuit on his own behalf (and not a class action), as there is already (previously) a class action lawsuit in the District Court (prior to the events that give rise to this claim) <u>Hunter v. County of Sacramento, et al.</u> (2:06-cv-00457)

### ADHERENCE TO REQUIRMENT OF GOVERNMENT CLAIM DEMAND

3. Plaintiff timely filed his Government Claim demand on the above defendants on 05/10/2011, and defendants rejected Plaintiff's claim on 09/14/2011 (but served it by mail on 09/19/2011). Plaintiff thereafter timely files this lawsuit.

### PARTIES

4. Plaintiff at all times mentioned herein, and at all times relevant for this lawsuit, was/is a incarcerated (hereafter "detainee") at the Sacramento County Mail Jail.

5. Defendant COUNTY OF SACRAMENTO (hereafter "COUNTY") was, at all times relevant, a government entity lawfully formed and functioning under the laws of the State of California.

6. Defendant SACRAMENTO COUNTY SHERIFF (hereafter "SHERIFF DEPT.") was, at all times relevant, a law enforcement body lawfully formed and functioning under the laws of the State of California.

    a. At all times relevant, SHERIFF was/is an agency subject to the control of the COUNTY.

7. At all times relevant, COUNTY and SHERIFF was/were acting under color of law, to

wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of California and or COUNTY and SHERIFF.

8. At all times relevant, SCOTT R. JONES is/was the Sheriff of the County of Sacramento (hereafter "SHERIFF") and is/was acting in both his individual and official capacity.

    a. At all times relevant, SHERIFF was a lawfully appointed public officer and was responsible for the events that took place, as set fort herein. Further, SHERIFF was, at all times relevant, acting under color of law.

9. GUSTAVUS YOUNGBERG (hereafter "DEP. YOUNGBERG") was, at all times relevant, an employee of SHERIFF DEPT. (employed as a deputy of the SHERIFF) and was acting in both his individual and official capacity. Further, at all times relevant, DEP. YOUNGBERG was acting under color of law in his capacity as an employee of SHERIFF and the COUNTY.

10. Several other DOE DEFENDANTS, who are as yet unknown to Plaintiff, were, at all times relevant, employees of the SHERIFF and were acting in both their individual and official capacity under color of law.

11. Defendants, and each of them, at all times relevant, conspired to create a wall of silence and lies to obstruct justice, thus creating an environment that encouraged the use of excessive force against detainees, including Plaintiff, and thereafter encourage a culture and environment intended to cover the occurrences of such event. Further, Plaintiff alleges that the SHERIFF failed to take the steps necessary to prevent the use and occurrence of excessive force in the Main Jail. Plaintiff alleges and believes that the aforementioned conduct of the COUNTY, SHERIFF, and SCOTT R. JONES created and condoned an environment in which the most violent and indifferent of deputies employed

the use of excessive force with the afore-knowledge that they would be insulated from justice and prosecution for their acts, as alleged and set forth herein.

12. Plaintiff further alleges that Defendants and their employees, and each of them, at all times relevant, further conspired to deprive detainees of necessary medical care for injuries inflicted upon detainees at the hands of the employees of SHERIFF and the COUNTY.

### THE EXCESSIVE USE OF FORCE

13. Plaintiff incorporates paragraphs 1 through 12 as though fully set forth herein.

14. On 02/24/2011 (Thursday), at approximately 11:00 p.m., claimant Ontriel Jones was arrested by Sacramento Police Department and booked into the Sacramento County Jail, at 651 I Street, Sacramento, CA 95814.

15. In the process of booking Mr. Jones, DEP. YOUNGBERG told him that he needed to be strip searched based on his arrest for possession of a controlled substance (controlled medication without a prescription).

16. At no time did Mr. Jones resist or engage in any physical altercation with DEP. YOUNGBERG.

17. At the time DEP YOUNGBERG wanted to perform the strip search, Mr. Jones informed DEP. YOUNGBERG that he did not want to be searched and that he did not give his consent.

    a. Mr. Jones informed DEP. YOUNGBERG that he was a homosexual, and was very sensitive to being touched and/or searched based on prior trauma inflicted upon him.

18. DEP. YOUNGBERG then took him into a private area, and upon entering into the private

area, DEP. YOUNGBERG tried to coerce and force Mr. Jones into agreeing to the strip search, despite Mr. Jones repeatedly telling DEP. YOUNGBERG that he did not consent to the strip search.

    a. At all times relevant, DEP. YOUGBERG tried to force Mr. Jones to consent to the strip search, in violation of clear policies of the SHERIFF that required DEP. YOUNGBERG to cease his attempts to force and/or coerce Mr. Jones into giving his consent. Policies of the SHERIFF, in regards to strip searches, required DEP. YOUNGBERG, upon Mr. Jones indicating his refusal to give consent to the strip search, to place Mr. Jones in an isolation cell and notify a supervisor before taking any further action.

    b. In violation of the SHERIFF's clear policies regarding strip searches, DEP. YOUNGBERG tried to force Mr. Jones to consent to a strip search, and in the process, attacked Mr. Jones. DEP. YOUNGBERG, and 3 other deputies, forced Mr. Jones to the ground and immobilized him.

    c. While immobilized on the ground, face down, DEP. YOUNGBERG attempted to place Mr. Jones's right arm in an arm bar control hold and caused a commutated spiral fracture of the right arm, just above the elbow.

    d. At no time did Plaintiff resist or put up any physical opposition to justify the use of the attack or a restraint hold. There simply was no reason to apply any physical force to Plaintiff whatsoever.

19. Upon Mr. Jones being placed in the arm bar control hold by DEP. YOUNGBERG, Mr. Jones heard a loud crack sound and felt immediate intense pain in his right arm. Immediately after, he experienced swelling and bruising in his arm.

20. DEP. YOUNGBERG performed these acts, in both an individual and official capacity, under color of state law and pursuant to an established custom, policy, and practice of the COUNTY and the SHERIFF, in place since at least the 1980's, to place detainee's in a control hold that the SHERIFF knew was cruel and subjected the detainee to the significant risk of injury.

21. At the time the restraint hold was used, Plaintiff was not violating any laws that justified the use of force, nor was he making any overt threats, or engaging in any conduct whatsoever, that that could have or would have placed DEP. YOUNGBERG in fear of his/her safety so as to justify the use of such a restraint hold.

22. At the time of Plaintiff being brutalized by DEP. YOUNGBERG, as described above, Plaintiff was not attempting to interfere with any peace officer's execution of their duties and was not engaged in any assaulting behavior towards any officer, including, but not limited to, DEP. YOUNGBERG.

23. The brutal restraint hold employed against Plaintiff was entirely unjustified by any action of Plaintiff, and constituted an unreasonable and excessive use of force.

24. DEP. YOUNGBERG, who was not placed in fear of his safety by any conduct of Plaintiff, acted with malice and a reckless disregard for Plaintiff's rights. Further, DEP. YOUNGBERG acted in a manner displaying a malicious and reckless disregard for Plaintiff's safety.

25. The excessive use of force employed by DEP. YOUNGBERG violated Plaintiff's rights as guaranteed by the U.S. Constitution as set forth in the 4th, 5th, 8th and or 14th Amendments.

## DENIAL OF REQUIRED MEDICAL CARE

26. Immediately upon injury to his arm, Mr. Jones reported to DEP. YOUNGBERG that he felt that his arm was injured and that he needed medical care. DEP. YOUNGBERG, and other deputies involved in the incident, were present when Mr. Jones reported his arm being injured (they heard the arm snap) and heard him make the statement.

27. In response to Plaintiff's complaint, a nurse was sent to see Mr. Jones in a holding cell. The nurse said that he should sit for awhile to see if the swelling goes down. Nothing further was done to assist Mr. Jones in any way at this time.

28. On 02/25/11, just past midnight or close to that time, the officers came back and told Mr. Jones that he had to get up. Mr. Jones informed the officers that he could not get up. The officers then grabbed Mr. Jones under both arms, despite having reason to know one of the arms was probably broken, and lifted him up and took him to the medical unit.

29. At the medical unit, Mr. Jones was looked at by the same nurse who had come to his cell; the nurse told him that he was to stay in the medical unit the next morning so as to be examined by a doctor.

30. On the morning of 02/25/11 (Friday), Mr. Jones saw a doctor. She said "OMG, what did they do?" This doctor then took x-rays and gave him pain medication. No further treatment was provided. He was then taken back to a holding cell by deputies (different ones).

31. The same doctor later came to his holding cell and told him that his arm was broken in two places, that it was a bad break, and that he would need surgery.

32. On 02/26/11 through 02/27/11, Mr. Jones was made to stay in his cell and only received pain medication twice on the 26th. When he requested more, due to the intense pain, he

was refused.  No medication was given on the 27th.

33. On 02/28/11, (Monday) an orthopedic surgeon saw Mr. Jones.  Mr. Jones received X-Rays again, and was told by the orthopedic surgeon that he needed surgery immediately to correct the damage done to his arm.

   a. Nothing further was done, and Mr. Jones was released without being provided any medical care to remedy the damage done to his right arm.

34. On 03/01/11, (Tuesday) Mr. Jones was released from the jail at approximately 5:00 a.m. When he got his papers to be released, he informed the officer that they were supposed to pay for the surgery.  They told him to leave.

35. Mr. Jones left the Main Jail and went immediately to Sutter General Hospital for treatment.

   a. Sutter General Hospital had X-Rays taken, and placed a splint on his right arm. Mr. Jones kept the splint on through 03/02/11.

   b. Mr. Jones was told that he needed a referral from his doctor before the surgery could be performed.

   c. He was not able to get in touch with his doctor through UC Davis, so he finally went into UC Davis hospital ER.

36. On 03/07/11 (Monday), Mr. Jones went to UC Davis and was admitted.

   a. He subsequently underwent and received surgery to repair the broken arm.

   b. Mr. Jones stayed in the hospital for approximately one week.

37. At no time after his release did the COUNTY or the SHERIFF contact him to provide further medical services, notably, the surgery he needed to correct the injury inflicted upon him by DEP. YOUNGBERG.  Mr. Jones was never contacted, by any person, at

any time, to find out what happened with his broken right arm.

## INJURIES AND DAMAGES

38. To this day, and probably for the rest of this life, Mr. Jones will continue to suffer from a multitude of symptoms. For example, he now suffers from instability, weakness, and pain in the area of the fractures/surgery.

    a. He now has a visible, long scar from the surgery.

    b. None of these problems existed prior to this incident.

39. Moreover, based on what occurred Plaintiff now suffers from an extreme fear and distrust of law enforcement officers.

40. Moreover, he has an extreme prejudice towards the COUNTY and the SHERIFF for the way in which he was abandoned, and not provided any care whatsoever, after his release from the Main Jail.

41. Between the time of arrest and breakage of his right arm, Mr. Jones was in jail for six (6) days with no more than a splint and minimal pain medication.

    a. Anyone with even a minor amount of medical training would, and should have, recognized the condition, and that it is essential to act quickly regarding such a severe breakage.

42. If the officers had bothered to listen to and examine Mr. Jones during his stay in the jail clinic, they would have recognized Mr. Jones's symptoms as the "pre-cursor" (or warning signs) of a serious breakage in his right arm.

    a. They should have immediately taken Mr. Jones to the clinic, where they would have (or should have) administered appropriate medication to bring down his pain, and made the appropriate telephone call(s) to ensure a doctor come to the

jail, or in the alternative, transport Mr. Jones to a hospital for adequate medical treatment.

43. It is with reasonable medical certainty to state that the treatment of Mr. Jones's symptoms during his entire stay at the jail would have been substantially less severe than it was since he did not receive immediate medical treatment.

   a. In fact, had Mr. Jones received adequate care of the injury he suffered, he may not have needed any surgery at all.

44. To this day, Mr. Jones claims that he is still in pain, and has to live with the long scar on his right arm as a result of the officers severely breaking his right arm.

45. To this day, not one person from the COUNTY or the SHERIFF has ever contacted him to find out how he was injured, or whether he ever was provided any further treatment and care.

### FIRST CAUSE OF ACTION

### 42 USC section 1983

### EXCESSIVE FORCE

### AS AGAINST DEP. YOUNGBERG

46. Plaintiff incorporates paragraphs 1 through 45 as though fully set forth herein.

47. At no time did Plaintiff offer any physical resistance to DEP. YOUNGBERG to justify the use of physical force, or the employment of a restraint hold.

48. DEP. YOUNGBERG, without good cause, maliciously and recklessly subjected Plaintiff to a restraint hold that he knew, or should have known, was likely to cause severe injury to the person of Plaintiff.

49. DEP. YOUNGBERG employed the restraint hold at a time when he lacked reason to fear

for his personal safety due to any act by Plaintiff.

50. At the time DEP. YOUNGBERG employed the restraint hold, he acted with malice and a conscious and reckless disregard for Plaintiff's rights, and in a manner that displayed a malicious and reckless disregard for Plaintiff's safety.

51. DEP. YOUNGBERG performed these acts, in both an individual and official capacity, under color of state law and pursuant to an established custom, policy, and practice of the COUNTY and the SHERIFF, in place since at least the 1980's to place detainee's in a control hold that the SHERIFF knew was cruel and subjected the detainee to the significant risk of injury.

52. At the time the restraint hold was used, Plaintiff was not violating any law that justified the use of force, nor was he making any over threats for the use of force that would place DEP. YOUNGBERG in fear for his/her safety so as to justify the use of such a restraint hold.

53. At the time of Plaintiff being brutalized by DEP. YOUNGBERG, Plaintiff was not attempting to interfere with any peace officer's execution of their duties and was not engaged in any assaulting behavior towards any officer, including, but not limited to, DEP. YOUNGBERG.

54. The brutal restraint hold employed against Plaintiff was entirely unjustified by any action of Plaintiff, and constituted an unreasonable and excessive use of force.

55. The excessive use of force employed by DEP. YOUNGBERG violated Plaintiff's rights as guaranteed by the U.S. Constitution as set forth in the 4th, 5th, 8th and or 14th Amendments.

56. The conduct of DEP. YOUNGBERG was a direct and proximate cause of injury to

Plaintiff's person.

57. Plaintiff is entitled to an award of all general and special damages, punitive damages, and attorney fees as set forth in 42 U.S.C. sections 1983 and 1988.

## SECOND CAUSE OF ACTION

42 USC section 1983

*Monell* Claim

Against COUNTY, SHERIFF, AND SCOTT R. JONES

58. Plaintiff incorporates paragraphs 1 through 57 as though fully set forth herein.

59. Pursuant to *Monell v. Dept. of Soc. Svcs.* (1978) 436 US 658, 694, Plaintiff asserts that the COUNTY and the SHERIFF are directly liable for the use of excessive force against Plaintiff as set forth above.

60. Specifically, Plaintiff asserts that the acts of DEP. YOUNGBERG are a direct result of a long standing practice or custom to subject detainees at the Main Jail to excessive force, and then to demonstrate institutional indifference to complaints of excessive force.

61. Moreover, Plaintiff alleges that the COUNTY and SHERIFF have intentionally failed to perform an adequate investigation into complaints of excessive force, have failed to institute an adequate investigative process, failed to institute an adequate discipline process, and in many instances have allowed its employees to falsify reports and to escape any discipline or prosecution whatsoever.

   a. Summarily stated, the COUNTY and SHERIFF have, through its combined efforts, created a wall of silence and essentially insulated its employees from any culpability or liability for decades (and hundreds of cases) of the use of excessive force against Main Jail detainees.

62. Specifically, Plaintiff alleges that the COUNTY and the SHERIFF have done the following:

   a. Encouraged the use of excessive force against detainees by recruiting, training, and hiring those persons (primarily men) particularly likely to engage in such conduct;

   b. By failing to monitor the complaints of excessive force against SHERIFF employees against detainees.

   c. By failing to adequately train its employees to refrain from using excessive force, except in situations that require it.

   d. By failing to adequately discipline SHERIFF employees who engage in acts of excessive force against detainees.

   e. By using a system of discipline that places those employees most likely to engage in acts of excessive force in close proximity and control of Main Jail detainees, and without adequate or appropriate supervision, training, or discipline.

   f. By placing relatively inexperienced and untrained SHERIFF employees in charge of Main Jail detainees when the COUNTY and SHERIFF know that certain detainees (ie … those under the influence of drugs and/or alcohol at the time of arrest and initial detention) require a higher level of training and experience so as to avoid the imposition of excessive force.

   g. That the COUNTY and SHERIFF have intentionally concealed known incidents of the use of excessive force.

   h. That upon prior and concurrent lawsuits (class action lawsuit noted above) and investigations, the COUNTY and SHERIFF failed to implement protocols,

procedures, and measures recommended to improve employee conduct in the area of the use and investigation of complaints of excessive use of force.

    i. That the SHERIFF and the COUNTY have intentionally refused to modify or alter, or in any way change, the restraint hold policies that have remained in place for more than 2 decades.

63. Plaintiff alleges, based on information and belief, that the COUNTY, SHERIFF, and SCOTT R. JONES (and his predecessors), in both his individual and official capacity, have ratified the above conduct as follows:

    a. Prepared investigative reports designed to vindicate the use of excessive force

    b. Prepared investigative reports based upon the testimony of employees whom the SHERIFF knows to be false and misleading

    c. Destroyed surveillance evidence that shows the use of excessive force

    d. Ignored surveillance evidence that shows the use of excessive force

    e. Prepared investigative reports that omit reference to clear evidence of the use of excessive force

    f. Accepted reports of employees and supervisors denying the use of excessive force that were clearly contradicted by evidence and statements of detainees and other employees

    g. Accepted and used of investigative reports that were known to omit investigation, and evidence, of the use of excessive force

    h. Failed to cooperate with the District Attorney, and other law enforcement efforts, to investigate complaints of the use of excessive force

64. As a direct and proximate result of the above referenced conduct of COUNTY,

SHERIFF, and SCOTT R. JONES, a culture and environment have been created that encourages and accepts the use of excessive force that caused Plaintiff to be subjected to the use of excessive force, resulting in severe injury to his person, in violation of his constitutional rights (as discussed above).

### THIRD CAUSE OF ACTION

**As Against** COUNTY and SHERIFF

**Section 1983 Liability**

65. Plaintiff incorporates paragraphs 1 through 64 as though fully set forth herein.

66. The conduct of the employees of the COUNTY and the SHERIFF, as described herein, has been and was a deliberate indifference to Plaintiff's injuries and immediate medical needs.

67. Plaintiff alleges that a deliberate indifference to a detainee's medical needs, which over time has become a regular occurrence as a result of institutional policies of the COUNTY and the SHERIFF, constitutes cruel and unusual punishment and creates section 1983 liability. See *West v. Atkins* (1988) 487 US 42, 48; *Estelle v. Gamble* (1976) 429 US 97, 105-105; *Hunt v. Dental Dept.* (9th Cir. 1989) 865 F.2d 198, 200 [deliberate indifference to dental problems constitutes section 1983 claim]; *Wood v. Sunn* (9th Cir. 1988) 865 F.2d 982, 988 [deliberate indifference to urological and kidney problems constitutes section 1983 claim).

68. Plaintiff alleges that had the employees of the COUNTY and the SHERIFF performed their jobs adequately and appropriately, which they were prevented from doing due to the policies of the COUNTY and the SHERIFF, they would have done the following:

    a. Immediately removed him from the Main Jail and transported him to an

appropriate medical facility to deal with his injuries.

    b. Immediately provided him adequate medication to alleviate the extreme pain he was suffering.

    c. Immediately provided him the necessary medical procedures, which in this case, was a surgery to deal with the injuries caused by DEP. YOUNGBERG.

    d. Provided him follow up care.

69. As a result of the medical indifference of the persons referenced above, Plaintiff suffered excruciating pain for an extended period of time.

70. The conduct of the above-referenced persons constituted deliberate indifference to the medical needs of Plaintiff.

71. Plaintiff alleges that the conduct of these persons is/was the proximate and direct cause of Plaintiff's significant suffering, which was unnecessary and could have been alleviated through the use of appropriate medical care.

### FOURTH CAUSE OF ACTION

### 42 USC section 1983

### As Against COUNTY, SHERIFF, AND SCOTT R. JONES

### *Monell* Liability for Failure to Provide Medical Care

72. Plaintiff incorporates paragraphs 1 through 71 as though fully set forth herein.

73. Plaintiff has the right, pursuant to the 8th amendment, to be free from cruel and unusual punishment.

74. It is, without doubt, clear that the deliberate failure to provide medical services is deemed cruel and unusual punishment in violation of the 8th amendment.

75. Plaintiff alleges that what happened with him, in regards to the failure of the Main Jail to

provide adequate medical care, is a regular occurrence at the Main Jail. Specifically, Plaintiff had a known medical condition that was caused by DEP. YOUNGBERG, that the medical staff at the Main Jail failed to adequately treat while he was detained, and the medical staff failed to provide any follow up care or services upon Plaintiff's release from the Main Jail.

76. Specifically, Plaintiff alleges that the failure of the Main Jail to provide adequate medical services is a result of deliberate longstanding policy decision(s) by the COUNTY, SHERIFF, and SCOTT R JONES.

77. Pursuant to <u>Monell v. Dept. of Soc. Svcs.</u> (1978) 436 US 658, 694, Plaintiff asserts that the COUNTY and the SHERIFF are directly liable for the failure to provide him with necessary medical treatment and follow up services.

78. As a direct and proximate result of the conduct described herein, Plaintiff suffered extreme and debilitating pain unnecessarily.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

1. This Court award Plaintiff all damages to which he is entitled, including, but not limited to, past, present, and future general damages (emotional distress, pain and suffering, etc.) in a sum according to proof;

2. This Court award Plaintiff all damages to which he entitled, including, but not limited to, past, present, and future special damages (economic loss damages) in a sum according to proof;

3. This Court award Plaintiff punitive damages against DEP. YOUNGBERG as provided by statute and case law;

4. This Court award Plaintiff all damages to which he entitled, including, but not limited to, attorney's fees and litigation costs/expenses as allowed by statute (42 USC section 1988);

5. This Court award Plaintiff pre and post Judgment interest as allowed by law;

6. For such other and further relief as the court deems proper.

Dated: 8/25/2014

*[signature]*
ROBERT N. KITAY, ESQ.
Attorney for Plaintiff